Our next case is New Georgia Project, Inc. v. Attorney General, State of Georgia v. Attorney General, State of Georgia New Georgia Project violated run-of-the-mill campaign finance disclosure laws for years, and on appeal, they acknowledge that these laws can be constitutionally applied to express advocacy. So instead, they have a new theory, and they attempt to skirt liability through an argument that the Supreme Court just last term called a canon of constitutional collision. Against the text, precedent, and common sense, they want this court to broadly read Georgia's disclosure laws, much broader than they actually are, so that then the court can hold it facially overbroad and thus rescue New Georgia Project from its violations. Would you mind starting, I hate to disrupt the flow, but would you mind starting with what I take is the threshold contention that you've made about younger abstention? Absolutely, Your Honor. My next line was going to be, but you're not going to hear it. I share Judge Newsom's concern and would urge you to zero in like a laser beam on Younger v. Harris for me. So, I think this is about as clear of a case for younger abstention as you're likely to find. Younger abstention is meant to prevent federal courts from interfering with state criminal or civil enforcement proceedings, and that's exactly what happened here. Not only is that what happened here, that was New Georgia Project's entire goal. This investigation began years before the commission eventually issued its reasonable grounds determination and decided to go forward with an enforcement action. This is not a situation like the district courts seem to suggest, where the parties were kind of racing to the courthouse. New Georgia Project could have filed a pre-enforcement action before they violated the law, while they were violating the law, even after they violated the law, and they never did. They waited until there was an ongoing proceeding and then decided that they wanted to use this. Now help me with this, the ongoing proceeding has to be more than just an investigation, right? Exactly, we agree with that, Your Honor. So it has to mature into something more formal, something more judicial in nature. Yes, absolutely, Your Honor. When did that happen in the time frame here as you see it? It seems to me there are two dates that I want you to zero in on both of them. For me, August 4th, 2022, when the commission after the preliminary hearing concluded that there was reasonable grounds to believe that New Georgia violated the act and ordered New Georgia to participate in an evidentiary hearing before OSA. That's one date, and the other possible triggering date, everybody agrees, was a formal proceeding, was September 21, 2022, when the Attorney General of the state transfers the state enforcement proceedings from the commission to OSA. I take it as either of you are sufficient here, but tell me about the first one first. Yeah, so either are sufficient, so I want to be clear on that. So even accepting the date that they go with, younger abstention was still required. But the first date is really the thing that is like a criminal indictment, like a summons, like the sorts of things that the Supreme Court has said are the beginning of a proceeding such that you should no longer be yanking this into federal court. This was the full commission deciding. We've had this investigation, and now we've even given you an opportunity to respond. They don't have to do that, you know, constitutionally or anything like that, but we've given you an opportunity to respond to the evidence that we've managed to come up with, and we have decided that this should go to civil enforcement action. So when they tell the Attorney General, here, transfer this case to OSA and prosecute this, it's like it is almost a perfect analogy to, you know, a grand jury handing an indictment to a prosecutor and saying go forward. I have some concerns about this. The first one is it seems like you may have waived arguing that the August proceeding was part of this and that it started instead in September. Do you want to address that? Yeah, Your Honor, we definitely did not waive that. The one line that opposing counsel pointed to was just an off-the-cuff remark at the PI hearing about, well, that's not what we're going to argue right now, but it was clear enough in our brief that the district court itself understood that to be our argument and, in fact, ruled on that particular argument. So I don't see how we could have waived it or forfeited it. And in any event, the district court ruled on it, so it's obviously before the court. But I'd also like to point out it really shouldn't matter because even if we go with the September 21st. But before you go to the second one, let's just assume for the purpose of my question it wasn't waived because it was discussed and ruled upon squarely by the district court judge and, therefore, does it constitute a formal waiver. Let's just assume it for the purpose of my question. The August 4th, 2022 determination did not set a date or a time for a hearing, right? No, it does not have a specific time. Right. And the other thing it didn't do is actually commence the proceeding and, rather, it turned to the attorney general of the state and said, you commence the proceeding, right? Well, that part I would agree with. But what was it that the commission was asking the attorney general to do? I think the commission was asking the attorney general to prosecute the case. And the commission, to be clear, doesn't have to transfer the case. Right, but it chose to do that. Suppose the attorney general of Georgia said, thanks very much, we've read your findings and we're not impressed and we're not prosecuting the case before OSHA. Well, that would be, I think. Would the case have commenced simply because of what they said on August 4th and they're sending it on to the AG? No, I guess. I actually think that was the commencement. I think the analogy there, Judge Marcus, would be, let's say that you have a grand jury that produces an indictment and then the prosecutor decides, well, actually, a month in, two months, you could even be on your way to trial. And the prosecutor decides, well, actually, I don't want to prosecute this case anymore. The fact that at some point along the way you could stop pursuing the proceeding doesn't mean the proceeding has not begun at an earlier point. I mean, even now, technically speaking, assuming this court is reversed and we go back to the state agency, the commission could change its mind, the attorney general could change his mind. That doesn't mean it did not, in fact, begin. So if the AG had said no, they would then have had to commence it themselves? Or is that the wrong verb, commence? I don't think commence is the right word. I think continue themselves. It would have had to be something that someone obviously would have said. But they say that until that happens, whether by the AG or the commission, you don't really have a formal proceeding. That's what I take the argument to be. Until, I'm sorry, until which part happens? Until either the attorney general goes forward, which he does in September 21, or in his absence or his refusal, the commission does it itself. Yeah, I think that's their argument. I just think that that's wrong, and I also think it doesn't really matter in this case. Can I ask you one question? I know you want to get to the it doesn't matter because we went even under September 21. But of what relevance to the date picking is this statute? You can tell me if I've misunderstood it. But 21-513, where Georgia law itself seems to say that one of these proceedings shall be deemed to have commenced against a person when, as relevant here, Georgia serves on the person of notice for summons and hearing in accordance with the APA and so forth. Is that not sort of a choice by Georgia law to September 21 or no? No, I don't think so, Your Honor. That statute, assuming it's the one that I recall it to be, is really just talking about when APA procedures are required. And so what that is basically saying is under the APA, there are certain procedures that have to be followed. There has to be notice, opportunity for a hearing, those sorts of things. And until you've actually begun whatever the APA calls a proceeding, you don't have to worry about any of that. But I think for two reasons that doesn't really matter here. The first is younger abstention is concerned with civil enforcement actions that federal courts should not be getting involved with, not necessarily the technical description of an APA proceeding under state law. But second of all, in this case, as a matter of fact, New Jersey Project was very much involved even before the reasonable grounds finding was made. They were at this pre-reasonable grounds finding hearing. It's not like they were somehow not part of this or it didn't have the trappings of a formal proceeding. Actually, we have not made this argument, but arguably the hearing itself to decide whether to go forward was the kind of formal civil enforcement proceeding that younger requires. But in the 48 seconds that I have. So tell us why Hicks applies and how it plays out in this case because clearly September 21, if that's the date of the filing, postdates the filing in federal court by 21 days. It does, Your Honor, but both Hicks and Duran make the point that the key point is not literally when the federal case starts. It's when proceedings of substance on the merits have happened. And all that had happened in this case is the complaint had been filed and the commission had been served. That's literally, that's it. Well, there was one more thing. They filed not only a complaint, but they filed an application for a preliminary injunction. There was no answer, but it wasn't just the complaint. That's true. They had not even been responded to. And to just go to the Hicks. But counsel, I mean, that actually kind of lines up with a concern I have because it was within your power to respond and you responded exactly one day after you filed the complaint. And so the district court seemed to think that smacked of a little bit of gamesmanship there. And we do have some case law for your eyes alone and Tokyo Gwinnett that suggest that when you're looking at and interfering with an ongoing proceeding, because of a concern that if we define too narrowly what constitutes the proceedings of substance on the merits, we risk vesting the district attorney, not the aggrieved citizen, with the power to choose the forum and indeed the nature of the proceeding in which the federal constitutional claim will be litigated, that we should consider the substantiality of what's occurred in both the federal and the state forums, right? I mean, we've kind of suggested that. Wouldn't you agree? Well, Your Honor, two basic responses there. The first, I think the district court's suggestion that this was somehow gamesmanship on the part of the commission just does not pass the SNF test. This investigation had been going on for years. There had already been a reasonable estimate. It was an important project that had years to file a complaint. Although in some ways the fact that it started in 2019 and nothing happened for a couple of years, I mean, nothing is going on and it takes until 2022 and then somehow you all file your complaint literally the day before your response to the preliminary injunction is due. I mean, you have to admit that looks a little bit suspicious. No, not at all, Your Honor. Part of the reason this investigation took so long is because very simple subpoenas, New Georgia Project contested the entire way. We had to go to court to fight about the subpoenas. Now, I'm not saying it's not their right to do that, but they were the ones who delayed this at every turn. And to say that because once we make our reasonable grounds finding, they immediately run to federal court and then we at around the same time are then going forward with the state proceeding, somehow that that reflects poorly on the state, I don't think makes any sense at all. But to get back to the specific facts of Hicks and Duran, in those cases you actually had situations where not only the state enforcement action, but the violation itself came after a federal filing. So in Duran, one of the entities actually waited until after they had filed the federal complaint to violate the law. The state then instituted an enforcement action and the court said that's still younger abstention because you have not done anything substantial on the merits. And the district court did not even really look at whether anything substantial had been done on the merits. And if you do, there's no way to come to the conclusion that they have. This Court's case, or sorry, the Supreme Court's cases show that even having a TRO hearing is not necessarily enough for proceedings of substance on the merits. Here we have nothing. Okay. Thank you, counsel. And you've reserved five minutes for rebuttal. We'll hear from Ms. Branch. We let Mr. Petrani go over. We're going to give you the same amount of time that he went over by, which was about three minutes. Thank you, Your Honors. And may it please the Court, My name is Aria Branch for the Plaintiffs' Appellees. The district court did not abuse its discretion when it declined to abstain from hearing this case. Federal courts have a virtually unflagging obligation to hear cases that are within their jurisdiction. Only the clearest justifications merits abstention, and there were no such justifications here. Can I ask you, I guess, a pair of questions at the outset? So the standards is abuse of discretion. Substantively under Younger and Hicks, really, I guess the test that we're looking at is whether proceedings of substance on the merits had occurred, right? You agree with that? That's the test that Hicks lays out, right? So did the district court even engage that question? And if not, is that per se an abuse of discretion to have applied the wrong legal standard? I think the district court did engage in that test. How? Other than saying that we've gone beyond the embryonic stage, what did the district court say? The district court said, and I think it's important to keep the standard in mind here with respect to post-suit proceedings, whether to abstain based on a post-suit proceeding is a discretionary determination that requires a fact-specific assessment. And the district court walked through a number of facts that supported that there had been proceedings of substance on the merits. So this gets sort of to the second half of my question. When you say the district court walked through the facts, did the district court walk through the sorts of facts, sort of judicial facts, that Hicks says are relevant? The district court considered several of the factors that Hicks and the Tokyo Gwinnett cases say are relevant. And I think it's important to keep in mind that those factors are not required to be considered. They are examples of considerations that courts keep in mind when they're making this assessment. The district court considered the amount of time that it had before the state case was filed. The district court considered the fact that the plaintiffs had filed a complaint, had filed a preliminary injunction motion, and that the state had responded to that preliminary injunction motion the very day after the proceedings were commenced. Those were proceedings of substance on the merits. And importantly, the district court considered the fact that this is the type of case that involves facial First Amendment challenges. And this court has said, and for your eyes alone, and then Tokyo Gwinnett, that in most types of cases, district courts should be reluctant to find abstention because of the effects that it can have on chilling speech. To be fair, though, right? And at least for your eyes alone, I don't remember Tokyo Gwinnett quite well enough, but at least for your eyes alone, not only was there litigation on the merits, but I think there was some preliminary adjudication of the merits in the federal... In that case, the court did not abstain. And I think what the district court did is it compared this case to others like it. It said that it fell between the two lines of precedent. You have Hicks and Duran on the one hand where the state proceeding was commenced the day after the federal suit was filed, and you have Tokyo Gwinnett, and for your eyes alone, on the other hand, where more took place, admittedly, in the federal court before the state proceeding was commenced. This case fell in between those two lines of precedent, and the district court reasonably concluded that the First Amendment interest here pushed this case over the edge. It meant that it should not abstain. So, just so I'm clear, as I'm kind of like tallying up things that we could reasonably label proceedings of substance on the merits, it's really the filing of a complaint with an accompanying request for a preliminary injunction. Is there anything else merits-wise that happened before the state proceeding commenced? That happened before the state proceeding commenced. And that's all we're looking at under Hicks, right? Like, what happened in the federal lawsuit on the merits before the state proceeding was commenced? And I think it's also relevant to consider that nothing had happened in those proceedings. I think it's relevant, as the district court considered, that the state filed its response to the preliminary injunction motion the very day after the state proceedings were commenced, meaning that the district court had a fully briefed preliminary injunction motion that considered the merits of this case before it. But the day after, right? The day after. If you're just sort of, like, marking the timeline, if I'm understanding, it's like, complaint and PI request, state enforcement proceeding commences if we're taking September 21 as the triggering date. September 22, my birthday, the state responds to your PI motion. That's correct. But the district court did consider the fact that the filing of the OSA proceeding the day before the state was required to respond to the preliminary injunction motion did seem to indicate that they were basically shoring up their litigation position and creating an abstention defense, and the district court properly considered that as well. Let me ask you this, because this goes to something that we were discussing with Mr. Petrani as well. Is it better or worse, from sort of a bad faith, bad vibes perspective, if the state has been doing lots of stuff, stuff, stuff, stuff, and then the day after you file your PI motion, they file their formal enforcement proceeding and then respond, right? Is that better or worse than you commence your federal litigation and the next day the state comes out of left field, you've never heard from them before, and they seek to begin a civil enforcement proceeding? I might think that would be worse. I think that it is problematic in terms of this test, because in this type of case where First Amendment interests are at stake, and I think that the state waived the argument below that the pre-suit proceedings before the commission actually required abstention. But waiver aside and setting that aside, this is a fact-specific test, and the standard here is that the district court had to have abused its discretion in order for this court to find that it should have abstained. The problem that I'm having is the same question that Judge Newsom put to you, which is, did the district court even consider the legal landscape and the factors that the Supreme Court in Hicks and this court on more than one occasion said you have to consider? I read the district court opinion basically to be an analysis of how many days are too many, finding that the case fell between one day in Hicks and nearly a year in Tokyo, and it struck me, and I want you to help me with this, that that really missed the mark, because what it did not consider was the kinds of things that the case law said to consider. Was this in an embryonic stage? That's a phrase that the case law had used. As I look at what was done, did he ever answer the question of how much time the district court actually spent in deciding anything in this case? So I think that the district court did look at the factors from Tokyo Gwinnett. Let's just take them one by one. Does he say, I've spent a whole bunch of time on this already. I've reviewed the preliminary injunction hearing. I've reviewed the complaint. This is beyond the embryo. Is there anything like that that I would find in the opinion? Well, the district court said that it had had the case for three weeks before the OSA complaint was filed, and I think that is one of the factors from Tokyo Gwinnett. But I'm asking the question of time. How much time did the district court spend on the case? We're told that's a factor. Doesn't district court address that, how much time he spent? I think by saying that it had the case... In pending three weeks, that tells you that he spent a whole bunch of time on it. I think that that is the closest that... I think that is how the district court analyzed it. All right, we also ask whether there were any rulings, whether on the merits or any procedural rulings of some moment in the case. Does the district court mention any determinations on the merits or any procedural rulings? Because the only thing I saw that the district court did here was it admitted on your application, New Georgia Project's attorneys pro hoc, and that was basically it. Was there anything else that was actually ruled on procedurally or substantively by the district court in the period of time that Judge Newsom has isolated for us? I think there was nothing else that was ruled on, but I think it is important to keep in mind that the court can properly consider the filing of motions even if the district court did not rule... No, no, I accept it. I take that point, but one of the factors that the case law says a district court should consider is whether there were any rulings of any kind on the merits or on any issue, procedural issue of any moment. Not only does the district court not suggest in any way any of that, he didn't even highlight that as a factor. Can we read from the order that the district court actually considered whether there were any merits or procedural determinations as a factor that he had to consider in deciding whether Younger and Hicks should apply? The district court considered the fact that it had a preliminary injunction motion before it that was on the merits of this case. Let me ask you this. I'm sorry, I didn't mean to cut you off. That is the consideration that it made toward that factor. Let me ask you this. One factor that we're told to consider is whether any discovery had taken place in the case. Is there any record that any discovery had transpired between these two dates or that the district court even acknowledged that that was a factor that he was supposed to consider? There was no discovery that took place in this case. Was there going to be any discovery in this case? It was a purely legal issue. So there wouldn't have been any discovery in any case? There would not have been any discovery in this case. I do just want to zoom out, if I may, Your Honor, to say that in Hicks and Tokyo Gwinnett and the Supreme Court precedent on this, there isn't a requirement that the district court analyze each of those factors. I take your point, and I think that's right. But the problem that I'm having is when I look at all of it, none of it is discussed. For example, there's no hearing or conference that had been held. That's a factor that we're supposed to look at, right? There was no hearing or conference that had been held. I will say the district court, the day after, on September 23rd, which was the day after the state responded to the PI motion, the district court did order a hearing. Yes, but I thought I understood that the one thing we agreed on was sort of the boundaries that we're looking at. August 31st is a bookend, and September 21, and we're asking whether stuff of substance happened between those two dates because by everyone's concession on September 21, at the latest, the state proceeding had commenced into a judicial sense. So was any hearing scheduled or held between August 31 and September 21? Not in this case, Your Honor. All right. Did either party change its position in any way? I ask that because we're told if we add up Hicks and our two cases, that's a factor we're supposed to consider. Is there any record evidence that either a party had changed its position or that the district court had considered that factor? I don't think that there's record evidence that a party changed their position. I think that the district court exercised its discretion. It looked at some of the factors from Tokyo Gwinnett and walked through several of them. It placed specific emphasis on the fact that this case involves the First Amendment. I think that the difficulty from my perspective that you have, the dual difficulty is, one, that the district court really didn't conduct the analysis that together Hicks, Tokyo, and for your eyes alone instructed to conduct, and that if we then conduct that analysis, the factors seem not to be met. I'm just speaking for myself. That's the difficulty, I think. I think that the district court did engage in a fact-specific analysis of what happened between the time the OSA proceeding was commenced and what happened in the district court. The primary thing that the district court relied on was the fact that there had been a preliminary injunction motion filed on the merits and that the state filed its response the day before it responded in federal court, which created an abstention defense. The court noted that abstaining in this type of circumstance would sanction a reverse removal power, giving state officials broad discretion to essentially choose the forum. It was concerned about the chill on speech, and I think it rightfully considered the First Amendment interest here that this court considered that significantly, and for your eyes alone, and Tokyo Gwinnett, and I think it weighed in favor of declining to abstain. So can I ask you just sort of a question out of curiosity? Since the state, because I think the record is silent on this, since the state filed its complaint, what other actions have occurred in the state case? No. So there is no state court work at all involved in this? That's correct. The OSA proceeding stayed. Nothing had happened in the OSA proceeding. And so if you compare the two, it was clear that the federal suit was further along than the state proceeding. I want to just speak about sort of the incentives. Counsel talked about the fact that we could have sued earlier, and I think it's important to keep in mind that holding that we sued too late would essentially demand that parties jump the gun and file prematurely. We waited to sue until there was an actual enforcement proceeding commenced against us. Courts have held that that is the proper time to sue between the threat of enforcement and the actual commencement of an enforcement proceeding. And if that is correct, as the First Circuit and the Fourth Circuit have held, then the state shouldn't be able to file and commence proceedings to essentially block the plaintiff's right to have issues of federal constitutional significance heard by a federal court. I think it's important to keep in mind that Younger comes from the criminal context, and the important thing was the indictment, which actually commenced the state proceeding. Here, the indictment is akin to the complaint that was filed in the OSA matter. The proceedings that were before the commission, they did not have quote-unquote trial-like trappings. There was no impartial adjudicator. And as a matter of Georgia law, the commission proceedings simply were not judicial in nature. Your Honors raised the statute Georgia 21-513, which explains that the judicial proceedings do not commence until a complaint and summons and notice of hearing are served. Help me with that understanding of the procedures in Georgia. I understand that on August 4th, the commission, after conducting a hearing, found reasonable grounds to believe that New Georgia violated the act, and New Georgia was ordered by the commission to participate in an evidentiary hearing before OSA. And then they said to the AG, you proceed. But if the AG didn't do that, they had the power to proceed themselves. As I understand the Attorney General's position, that was enough to create a formal judicial type of proceeding. They'd already made their findings. They had had hearings. They heard evidence. And they ordered the commission, or the commission ordered New Georgia to appear. Tell me why that would not be enough under the structure itself. So the commission's process takes place in three phases. There's first the preliminary investigation, which took place here. Then there's a preliminary hearing, which also took place here. And then there's an order that follows that preliminary hearing. That order, though, basically marks the end of the investigation. It does not, on its own, commence a separate judicial proceeding. After the preliminary hearing and the reasonable grounds order, the AG's office proceeds by setting the matter for hearing under the APA. And it's only that third step that actually constitutes the commencement of a formal enforcement action as a matter of Georgia law. This is what Georgia law says in 21-5-13. It is very clear that that, basically, it's a bright line rule, that until that notice and summons are served. Could that be done by the commission itself without any intervention by the Attorney General? I don't think so, Your Honor. Under the law, I thought the commission could do it, but they just gave it to the AG to do it. Maybe I misunderstood that. My understanding is that it has to go to the AG. Let me ask you one other final question. I know you've gone over, but you can help me with this. Again, Younger. Younger is an exception to the general rule. It's a powerful rule that the federal courts have a virtually unflagging obligation to hear the cases that fall within our jurisdiction, and this does. So you don't have to convince me what it means to say a virtually unflagging obligation. But there is Younger, and there is Hicks. Younger says that the court has to consider three things. One, is there an ongoing state proceeding? That's what we've been discussing. And Younger says there are two additional things that have to be met. Does the state proceeding implicate an important state interest? And does the state proceeding afford the federal plaintiff an adequate opportunity for judicial review of the plaintiff's federal constitutional claim? Is there any dispute that those two standards of Younger have been met here? We don't challenge those two standards of Younger. I would make a brief point on the third, which is that OSA, under the Georgia Administrative Code, cannot decide challenges to constitutionality of statutes. And so if this were to proceed to OSA, we won't get to raise our fundamental constitutional objections in state court until after a slog through thousands of transactions that the commission has said are contributions and expenditures. So we'll have to litigate the merits of each of those transactions. And if we are right about the constitutional issue, then none of that is necessary. And that, I think, is another reason that weighs in favor of declining to abstain, because there is going to be real harm, I think, to our First Amendment interests and also to New Georgia Project as a litigant in terms of the expense and the time spent on this matter. There's no reason to go through the OSA proceeding and litigate each transaction in detail if we are right about our constitutional arguments. Are you arguing, then, that there isn't an adequate opportunity for judicial review of the federal constitutional claims in state court? We haven't made that argument, because I think minimal sex basically makes it difficult. Makes it pretty hard. I agree. But I did want to raise that issue, because it is relevant to the district court's discussion. All right. Thank you, counsel. Mr. Petrany, just to even things out, we'll give you another four minutes as well. Thank you, Your Honor. I will try to be brief. The first point is echoing Judge Marcus and Judge Newsom's questions. The district court did not address this standard at all, and it certainly didn't say, just to pick up on the last point from my friend on the other side, anything about the ability to raise federal constitutional challenges. Of course, the Supreme Court has actually on multiple occasions said, as long as you can do that in a judicial proceeding at some point, that's fine. But I want to get to the standard. Just so that I'm clear, if it went to OSA and there was a ruling by an administrative law judge, basically, from there it would go to superior court? Well, the commission would actually get the final say in the administrative proceeding. But yes, then they could go to superior court. But it could do something else instead, right? Who could do something? I'm not sure. Well, so I'm sorry. Maybe I'm confused. I'm thinking about the August hearing. As of the August hearing, it wasn't necessarily the case that it had to be sent to the attorney general. There was another route it could have taken. It could have gone through the commission. Marcus' question to be about, given the proceedings as they were going to be, at the end, do you have judicial review from the superior court and ultimately the courts of appeals in Georgia? And that's absolutely correct. It's also true that the commission need not send something to OSA. They've chosen to do that in most cases, but they don't have to. They can just do it themselves, which I think lends even further support to the idea that there's nothing talismanic about transferring something to OSA. It's a procedural part of one case. But again, even if we're assuming that the 21st is the date, the analysis that the district court used was very clearly dates. It said, well, there was only one day in these Supreme Court cases, and there was a lot of days in these 11th Circuit cases, and we're somewhere in between. That isn't the correct analysis, and that's also wrong. In Hicks, it was a month and a half from the time of the filing of the complaint to the time that the state instituted a proceeding. And in Doran, you have a situation where not only did you have the PI hearing scheduled, which hadn't even been done here, you had a TAO hearing done by the time that the state agency had done anything. So I think that both as a matter of the legal standard the district court erred as a matter of law and just not applying the right one, but also as a matter of could this even be anything other than younger abstention? As a matter of law, given Hicks and Doran, I don't see how it possibly could. One of the things the opposing counsel said was, well, we needed to wait until there was a threat of enforcement. The threat of enforcement is the existence of the statute. They knew when the statute was enacted, before New Georgia Project even existed, that this was the rule in Georgia. Pre-enforcement challenges are the safe way to make sure that your constitutional claims are heard in the forum you want them to be heard in before you violate the law. In fact, in Doran, the Supreme Court made this point explicitly. Once you've started violating the law, you can't then complain that you're in the state proceeding as opposed to the federal proceeding. My last point would just be, this isn't, the analysis is not a comparison between how far along is the state proceeding and how far along is the federal proceeding. The analysis is, how far along is the federal proceeding? Has it reached substantive... Yes, that's true. But we have made statements about a comparative analysis about what's going on in the state versus what's going on in the federal, especially when we've talked about First Amendment issues. So, Your Honor, those statements were made in the context of a federal case that was way further along, significantly further. It wasn't three weeks in with nothing on the merits having been done. And I take your point on the First Amendment, but it's worth pointing out, of course, Hicks and Doran were both First Amendment cases. And there was absolutely nothing stopping New Georgia Project from five years ago, six years ago, seven years ago, filing a case in federal district court to have their claims heard. Along with what the Supreme Court said in Doran, I think this court should say, they can't now be heard to complain that this proceeding would go forward in state court. I'm happy to answer any further questions Your Honors have. Otherwise, I'm also happy to just sit here. I had asked your colleague this question. Did the commission have to go through the AG to commence this formal quasi-judicial proceeding before the administrative law judge? And she said, yes, I think she did. And I asked, well, could the commission do that on its own steam? And I took her to say, no, this is the way you do it through the AG as she read the procedures. Give me your thoughts on that. What independent authority did the commission have if it chose not to use the Attorney General, if any? My understanding, Judge Marcus, is that the commission does need to go to the AG. It doesn't need to tell the AG, go to OSA. It can say, we want to do this all in our own proceedings. But that's my understanding of the statute. That being said, I don't want to say anything too strong on that point because this is the way the commission always does it. So I could not point you to a statutory citation that says that's the way that they have to do it necessarily. But that is my understanding of the way that they do it. Thank you. All right. Thank you, counsel.